UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
ALEXANDER KHAYKIN,

                                    Plaintiff,                    25 Civ.

            -against-
                                                        **VERIFIED COMPLAINT**
NASSAU COUNTY, New York, PATRICK
RYDER, Individually and in his Official Capacity as
Police Commissioner, CHRISTOPHER TODD,
Individually, JOHN DOE, Individually, and STEVEN
JAMES, in his Official Capacity as NYSP Superintendent,

                                    Defendants.
-----------------------------------------------------------------------x

        Plaintiff, ALEXANDER KHAYKIN, by his attorneys The Bellantoni Law Firm, PLLC,

for his Verified Complaint respectfully states:

        1.      In its June 23, 2022 Opinion in *NYSRPA v. Bruen*[1], the Supreme Court explicitly

rebuked discretionary firearm licensing regimes with subjective criteria "like New York's" that

"require the appraisal of facts, the exercise of judgment, and the formation of an opinion…" *New*

*York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 38 n. 9 (2022).

        2.      The *Bruen* Court cautioned the 6 'outlier' states, including New York, that the

survival of their may-issue licensing schemes was contingent upon the transition to a shall-issue

scheme with objective criteria. *Id.*

        3.      Post-*Bruen*, in 2022 the New York State Legislature amended the "good moral

character" language of Penal Law § 400.00(1)(b) to restrict the eligibility requirement to those

who are deemed to be "dangerous." Penal Law § 400.00(1)(b) ("good moral character…shall mean

having the essential character, temperament and judgement necessary to be entrusted with a

---

[1] 597 U.S. 1 (2022).

weapon and to use it only in a manner that does not endanger oneself or others"). The Second

Circuit finds this definition to be a "proxy for dangerousness." *Antonyuk v. James*, 120 F.4th 941,

981 (2d Cir. 2024) ("The CCIA's definition of "character" is a proxy for dangerousness: whether

the applicant, if licensed to carry a firearm, is likely to pose a danger to himself, others, or public

safety. And "[s]ince the founding, our Nation's firearm laws have included provisions preventing

individuals who threaten physical harm to others from misusing firearms." Quoting, *United States*

*v. Rahimi*, 602 U.S. 680, 690 (2024).

4.     In *United States v. Rahimi*, the Supreme Court reiterated the historical tradition of

*temporarily* disarming individuals who have been adjudicated by a court as posing a "credible

threat to the physical safety" of another person. *United States v. Rahimi*, No. 22-915, 2024 WL

3074728, at *5 (U.S. June 21, 2024). In so holding, the Court reconfirmed that the Second

Amendment rights to possess and carry firearms extends to "the People" of the United States of

America – "ordinary citizens."  *Rahimi*, at *5 citing *District of Columbia v. Heller*, 554 U.S. 570,

626 (2008).

5.     All nine Justices of the Supreme Court in *Rahimi* flatly rejected the government's

argument that the government can also disarm people who are "not responsible" – confirming that

barring the possession of firearms in the absence of a court adjudication that the individual poses

a "credible threat" to others violates the Second Amendment:

> "…we reject the Government's contention that Rahimi may be disarmed simply
> because he is not "responsible." Brief for United States 6; see Tr. of Oral Arg.
> 8–11. "Responsible" is a vague term. It is unclear what such a rule would entail.
> Nor does such a line derive from our case law.
>
> In *Heller* and *Bruen*, we used the term "responsible" to describe the class of
> ordinary citizens who undoubtedly enjoy the Second Amendment right. See,
> e.g., *Heller*, 554 U.S., at 635, 128 S.Ct. 2783; *Bruen*, 597 U.S., at 70, 142 S.Ct.
> 2111. But those decisions did not define the term and said nothing about the
> status of citizens who were not "responsible."

*Rahimi*, at *11.

6.    Nassau County implements a policy that precludes the possession of handguns for self-defense even where an individual has no history of being adjudicated as "dangerous" or posing a credible threat to the physical safety of others," like Plaintiff.

7.    Plaintiff has no disqualifiers to the lawful possession of firearms under state or federal law and lawfully owns rifles and shotguns, which he purchased after passing a federal background check through NICS.[2]

8.    The Nassau County Defendants have foreclosed Plaintiff's ability to engage in Second Amendment conduct based on trivial and non-criminal adjudications, a poor driving history, and arrests that were dismissed and sealed. There is no historical tradition to support Defendants' policies, which warrants a permanent injunction of Nassau County's policy.

9.    Moreover, by requiring applicants who complete the statewide pistol license application to disclose sealed arrests and non-criminal violations, the New York State Police Superintendent's enforcement of New York State Executive Law § 296.00(16) violates the Second Amendment and should be permanently enjoined.

**NATURE OF THE ACTION**

10.    This is an action for declaratory, injunctive, and other relief, costs, disbursements, nominal damages, and reasonable statutory attorney's fees pursuant to 42 U.S.C. § 1988, for continuing irreparable harm to Plaintiff arising from violations of his constitutional rights as codified in, and protected by, the Second Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment. 42 U.S.C. § 1983.

---

[2] National Instant Criminal Background Check System.

## JURISDICTION AND VENUE

11.    Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the United States Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution. This action also seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983, § 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

12.    ALEXANDER KHAYKIN (hereinafter "Plaintiff") is a natural person and a resident of Nassau County, State of New York.

13.    At all times relevant herein, Plaintiff was an applicant for a New York State pistol license.

14.    Plaintiff has no disqualifiers to the possession of firearms under state or federal law.

15.    Defendant NASSAU COUNTY (the "County") is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

16.    Defendant PATRICK RYDER ("Ryder"), sued herein in his individual and official capacities, is the Police Commissioner of Nassau County.

17.    In his official capacity as Police Commissioner, Ryder is the statutory licensing officer for Nassau County pursuant to Penal Law § 265.00(10) for the issuance of licenses under Penal Law § 400.00, *et seq.*

4

18.     In his official capacity, Ryder is authorized to issue pistol licenses pursuant to Penal Law § 400.00, *et seq.*

19.     As the Police Commissioner, Ryder creates the policies and procedures of the Nassau County Pistol License Section ("PLS") concerning the issuance and/or denial of pistol license applications.

20.     As the Police Commissioner, Ryder creates the policies and procedures of the Nassau County Police Department ("NCPD") Legal Bureau for deciding internal appeals filed by applicants to challenge the denial of their pistol license applications.

21.     Ryder was personally involved in, and made the final decision to, deny Plaintiff's application for a New York State pistol license.

22.     Ryder is sued in his individual capacity based on his personal involvement in violating Plaintiff's Second Amendment rights.

23.     Defendant, CHRISTOPHER TODD ("Todd") sued in his individual capacity, is an employee of the NCPD Legal Bureau who reviews internal appeals of pistol license denials, enforces the Nassau County licensing policies challenged herein, and issues final determinations to Defendant Ryder. Todd was personally involved in enforcing the challenged Nassau County policies against Plaintiff to deny his appeal and uphold the initial denial of Plaintiff's application.

24.     Defendant JOHN DOE ("Doe"), sued in his individual capacity, is an employee of the NCPD PLS.

25.     Doe has final authority over granting applications for a New York State pistol license in the first instance, which is delegated to him by Ryder.

26.     Doe reviewed Plaintiff's application for a pistol license and made the initial decision to deny Plaintiff's application.

5

27.    Defendant STEVEN JAMES ("Defendant" or "NYSP Superintendent") sued herein in his official capacity only, is the Superintendent of the New York State Police.

28.    As the NYSP Superintendent, James is charged with publishing the statewide approved and required application for those seeking to apply for a license issued under Penal Law § 400.00, *et seq.*

29.    The NYSP Superintendent published the latest revision of the PPB-3 in November 2024.[3]

## CONSTITUTIONAL FRAMEWORK

30.    The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

31.    The Second Amendment codifies a "preexisting right."

> "[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right.
>
> The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."
>
> As we said in *United States v. Cruikshank* …[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ...."[4]

32.    The 'inherent right of self-defense' is central to the Second Amendment right.[5] "Self-defense had little to do with the right's codification; it was the *central component* of the right itself." *Heller*, 554 U.S. at 599 (emphasis supplied).

---

[3] https://troopers.ny.gov/system/files/documents/2024/11/ppb-3-11-24_1.pdf
[4] *D.C. v. Heller*, 554 U.S. 570, 592 (2008) (emphasis supplied) quoting, *Cruikshank*, supra.
[5] *Heller*, 554 U.S. at 628.

33.    The Second Amendment right of "the people…unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580.

> " '[T]he people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

*Heller*, 554 U.S. at 580 quoting *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990).

34.    The Fourteenth Amendment provides, in pertinent part: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.

35.    The Second Amendment *presumptively* protects the right to possess and carry all weapons in common use for self-defense. *Bruen*, 597 U.S. at 17 (emphasis added), see also at 28 ("even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense") citing, *Caetano v. Massachusetts*, 577 U.S. 411, 411–412 (2016) (per curiam) (stun guns).

36.    Handguns are weapons in common use for self-defense and are protected within the scope of the Second Amendment. *Heller,* 554 U.S. at 628 (recognizing handguns to be "an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose [self-defense].").

37.    In *Bruen*, the Supreme Court reiterated the text, history, and tradition standard of reviewing Second Amendment challenges, consistent with *Heller*, *McDonald*[6], and *Caetano*.[7]

38.    Flatly rejecting the 'interest balancing' 'intermediate scrutiny' test created by the Second Circuit (and others), the *Bruen* Court laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment:

> "We reiterate that the standard for applying the Second Amendment is as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, 597 U.S. at 17. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny.") (emphasis added) (citation omitted).

39.    "But to the extent that later history contradicts what the text says, the text controls." *Bruen*, 597 U.S. at 36.

## MATERIAL FACTS

### *New York State Handgun Licensing Regulations*

40.    Generally, the possession of handguns in New York State is a crime. Penal Law §265.00, *et seq.*

41.    To lawfully possess, purchase, and carry a handgun in New York, an individual must apply for and obtain a New York State pistol license.

---

[6] *McDonald v. Chicago*, 561 U.S. 742 (2010).
[7] "But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, at 2127. See also, *Caetano*, supra.

42.     Applications for, and the issuance of, pistol licenses are governed by the provisions of Penal Law § 400.00, *et seq.*

***New York Exec. Law § 296.00(16) Violates the Second Amendment, Facially and As-Applied***

43.     No application for a license issued under § 400.00 will be processed or considered unless the applicant completes the statewide application published by the New York State Police Superintendent (the "PPB-3") in its entirety. See also, Penal Law § 400.00(3).

44.     The NYSP Superintendent is required to include language on the PPB-3 that requires applicants to disclose the § 296.00(16) information.

45.     Every applicant for a New York State pistol license must be fingerprinted as part of the application process. See, Penal Law § 400.00(4). Meaning that, before any license is issued (or denied), the licensing officer will have the applicant's federal and state criminal history report (rap sheet) and will know whether the applicant has a disqualifying criminal conviction.

46.     Under § 400.00(4) entitled, "Investigation," "[b]efore a license is issued or renewed, there shall be an investigation of all statements required in the application by the duly constituted police authorities of the locality where such application is made…" including obtaining records from the "department of mental hygiene concerning previous or present mental illness."

47.     The "investigating officer shall take the fingerprints and physical descriptive data in quadruplicate of each individual by whom the application is signed and verified" and a fingerprint-based background check through the FBI and New York State Division of Criminal Justice shall be conducted and "written notification of the results of the search shall be forwarded to the investigating officer… [and u]pon completion of the investigation, the police authority shall report the results to the licensing officer without unnecessary delay."

48.     All criminal convictions and orders of protection concerning the applicant will be made available to the licensing officer before any determination of the firearms license application is made.

49.     Under Penal Law § 400.00(1) entitled "Eligibility" "No license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true."

50.     The New York State Police Superintendent publishes the "proper application" – the only statewide and state-approved application to obtain a license issued under § 400.00, *et seq.* – the PPB-3, which requires applicants to answer the following question: "Have you ever been arrested, summoned, charged or indicted anywhere for any offense, including DWI (except traffic infractions)? __Yes ___No    If yes, furnish the following information: Police Agency Charge Disposition Date    Disposition    Court Disposition…Sealed arrests must be included. *Refer to Executive Law §296(16)."

51.     New York Executive Law § 296(16) requires individuals seeking a license issued under Penal Law § 400.00, *et seq.* to disclose – and authorizes licensing officers to consider - past arrests and/or charges that were, *inter alia*,

- terminated in favor of the accused (C.P.L. 160.50);

- adjourned in contemplation of dismissal (C.P.L. 170.55, 170.56, 210.46, 210.47, or 215.10); and

- non-criminal violations sealed by the court (C.P.L. 160.55).

52.     None of the above events are disqualifiers to the possession, purchase, and/or carriage of firearms under 18 U.S.C. § 922(g) or state law.

53.     None of the above events will prevent the possession, purchase, and/or carriage of a rifle or shotgun under New York State law  [see, Penal Law § 265.01(4)].

54.     No application for a license issued under § 400.00 will be processed or considered unless the applicant completes the PPB-3 in its entirety.

55.     The NYSP Superintendent is required to include language on the PPB-3 that requires applicants to disclose the § 296.00(16) information.

56.     Compelling individuals to disclose sealed arrests, dismissed charges, and non-criminal offenses to simply exercise the preexisting right to possess, purchase, and carry handguns has no National historical analogue.

57.     Allowing the government to bar an individual's right to possess, purchase, and carry handguns based on arrests and charges that were adjudicated, dismissed, and sealed has no National historical analogue.

58.     Allowing the government to bar an individual's right to possess, purchase, and carry handguns based on non-criminal offenses has no National historical analogue.

59.     Disarming the People based on sealed arrests, dismissed charges, and non-criminal offenses violates the Second Amendment, as there is no national tradition of disarming people who have not been convicted of any crime and/or have not been adjudicated by a court as being 'dangerous.'

60.     The Superintendent should be enjoined from enforcing Executive Law § 296.00(16), including placing the disclosure requirement on the statewide PPB-3 application.

61.     The Nassau County Defendants should be enjoined from enforcing Executive Law § 296.00(16) when considering applications for licenses issued under Penal Law § 400.00, *et seq.*

62.     While New York State law protects convicted criminals from being discriminated against for employment-related purposes[8] subsection (16) of § 296.00 requires individuals to disclose dismissed charges, sealed arrests, and non-criminal violations on their license application before they may exercise the rights protected by the Second Amendment.

63.     The disclosure requirement of § 296.00(16) is integrated into the statewide license application published by the NYSP Superintendent, the PPB-3.

64.     Section 296.00(16) authorizes licensing officers to consider dismissed charges, sealed arrests, and non-criminal violations to deny non-prohibited individuals from engaging in conduct protected by the Second Amendment, including possessing, purchasing, and carrying firearms.

65.     In an employment scenario, an "individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur." Executive Law § 296(15).

66.     But individuals seeking to protect themselves by exercising rights presumptively protected by the Second Amendment, like Plaintiff, are barred from responding "as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur."

67.     Licensing officers, like defendant Ryder, take the allegations underlying dismissed charges, sealed arrests, and non-criminal violations as true and force the applicant to defend against such allegations – again – even though they were previously investigated by a prosecutor and adjudicated by a criminal court judge, to bar the exercise of an enumerated right.

---

[8] N.Y. Exec. Law § 296(15) forbids potential employers from inquiring into the above events and protects applicants for employment from having to disclose the above information  even though employment is merely a 'privilege,' and not a Right protected by the U.S. Constitution..

12

68.     An individual whose charges were terminated in favor of the accused (C.P.L. 160.50), adjourned in contemplation of dismissal (C.P.L. 170.55, 170.56, 210.46, 210.47, or 215.10), and non-criminal violations sealed by the court (C.P.L. 160.55) – like Plaintiff - has, *de facto*, *not* been adjudicated as a "dangerous" person.

69.     By allowing the licensing officers like the County Defendants to access to and consideration of (i) charges that were terminated in favor of the accused (C.P.L. 160.50), adjourned in contemplation of dismissal (C.P.L. 170.55, 170.56, 210.46, 210.47, or 215.10), and/or non-criminal violations sealed by the court (C.P.L. 160.55) to deny an individual, like Plaintiff, of the right to possess, purchase, and/or carry firearms for self-defense, N.Y. Executive Law § 296.00(16) violates the Second Amendment (applied to the states through the Fourteenth Amendment).

70.     A finding that the above-referenced sections of § 296.00(16) is unconstitutional, and permanently enjoining the defendant licensing officer, his agents, and all others who receive actual notice of such an order, from enforcing the challenged sections of § 296.00(16), Plaintiff will not suffer the continued violation of his Second Amendment rights.

71.     Permanently enjoining the Superintendent of the NYSP, his agents, and all others who receive actual notice of such an order, from enforcing § 296.00(16), thus removing the disclosure requirement from the PPB-3 application, would prevent an applicant's non-disclosure from constituting a basis to deny the application under preamble to § 400.00(1).

***Nassau County's Policies and Procedures for Denying Pistol Licenses***

72.     It is the police of the Nassau County Police Department ("NCPD") Pistol License Section ("PLS") to preclude individuals from possessing handguns for self-defense based on:

- Arrests that lack an adjudicated disqualifying conviction;

- Non-criminal convictions; and

- 'Poor driving history.'

73.    The PLS implements grounds to preclude handgun possession that are not based on a prior adjudication of dangerousness.

74.    The PLS implements a standard for determining a lack of "good moral character" that is inconsistent with America's traditions of disarming dangerous people.

75.    The PLS implements a standard for disarming individuals that has no historical analogue.

76.    The PLS permanently disarms individuals who have never been adjudicated by a court as "dangerous."

77.    Ryder, Todd and Doe implemented these policies against Plaintiff.

78.    Ryder, Todd and Doe's enforcement of these policies against Plaintiff have violated, and continue to violate, Plaintiff's Second Amendment rights.

79.    The Nassau County Defendants also continue to enforce as grounds for denial "good cause" to deny.

80.    The "good cause" to deny factor of § 400.00(1)(g) was *repealed* by the New York State Legislature's enactment of the Concealed Carry Improvement Act in 2022 as a basis to deny an application.

81.    Preventing the exercise of Second Amendment conduct for "good cause" reasons is as unconstitutional as the "proper cause" factor stricken by the Supreme Court in *Bruen.*

82.    There is no historical analogue for Nassau County's "good cause" policy.

**Plaintiff Alexander Khaykin – Pistol License Application, Denial, and Internal Appeal**

83.     Plaintiff, age 43, is a resident of Nassau County, New York, a taxpaying homeowner and part of 'the People' for whom the Second Amendment was codified.

84.     Plaintiff has no disqualifications to the possession, purchase, receipt, or transfer of firearms under state or federal law.

85.     Plaintiff owns shotguns and rifles, which he purchased from a federal firearms licensee (FFL/gun store) after being subjected to, and passing, federal background checks through the National Instant Criminal Background Check System (NICS).

86.     Plaintiff applied to Defendants for a New York State pistol license for self-defense and target shooting/hunting.

87.     When completing the statewide application (PPB-3), Plaintiff disclosed past "arrests" that resulted in the dismissal of charges, sealing of charges, ACD dismissals, and non-criminal violations.

88.     As required by the PLS, Plaintiff provided his lifetime driving abstract from the New York State Department of Motor Vehicles along with his license application.

89.     Plaintiff's application was referred to Defendant Doe for a determination.

90.     Doe had actual authority to grant Plaintiff's application, which was delegated to him by Ryder.

91.     By written determination dated March 28, 2023, Doe denied Plaintiff's application. Doe denied Plaintiff's application as follows:

> Your Nassau County Pistol License Application has been denied. This decision is based upon an investigation and recommendation from your Pistol License Investigator. As stated in the Nassau County Police Department Pistol License Handbook Chapter I, Section A and in accordance with section 400.00 of the Penal Law of the State of New York the Commissioner of Police of Nassau County has the exclusive

authority to issue pistol licenses within the County of Nassau based upon satisfactory proof that the applicant  is of good  moral character and provided  that no good cause exists for the denial of  such  license.

Based upon the totality of your  application   the following reason(s) contributed to this denial: History of multiple arrests (six); History of extensive poor driving record (10 suspensions and 27 VTL violations); Lack of good moral character.

92.    Plaintiff filed an internal appeal of the denial to the Pistol License Section.

93.    The appeal was assigned to Defendant Todd in the NCPD Legal Bureau for review.

94.    By written determination dated December 14, 2023, Todd enforced the PLS policies and procedures for denying pistol licenses.

95.    Todd recommended to Ryder that Plaintiff's denial be upheld.

96.    Todd enforced the PLS policy of denial where there has been no court adjudication of dangerousness.

97.    Enforcing PLS policies, Todd found that Plaintiff lacked "good moral character" under the dangerousness standard because of (i) prior arrests between 2001 and 2008, all of which resulted in either a dismissal or a plea of guilty to a non-criminal offense; and (ii) motor vehicle infractions.

***Prior Arrests Between 2001 and 2008***

98.    Plaintiff has no criminal convictions.

99.    Enforcing PLS policies, Todd found that Plaintiff's past arrests related to the possession of marijuana was "dangerous" and that this "dangerous" and "illicit" behavior between 2001 and 2008 with no correction in his behavior established that Plaintiff lacks "good moral character" and is barred from possessing handguns.

100.    An arrest is merely an allegation; it does not constitute an adjudication of guilt.

16

101.    Precluding Second Amendment protected conduct in the absence of a disqualifying conviction and/or court adjudication of "dangerousness" lacks an historical analogue.

102.    Plaintiff has no criminal convictions.

103.    Non-disqualifying criminal convictions that took place 15 years before the filing of his pistol license application are immaterial and irrelevant to the issue of whether the applicant is violent or dangerous *today*.

***Motor Vehicle Violations***

104.    Enforcing PLS policies, Todd found that Plaintiff's "negative driving history" required his disarmament.

105.    Applying Nassau County policy, Todd reasoned that minor traffic infractions "demonstrate not only a disregard for and inability to abide by lawful authority" and "a propensity to engage in dangerous behavior that puts [Plaintiff] and others at risk," a "proclivity for creating dangerous situations"  and further "an inability to be a law- abiding citizen."

106.    Disarming individuals based on trivial traffic infractions, as Defendants do, falls far outside of the *sui generis* category of events and conditions under which the People have historically been disarmed.

107.    Enforcing Nassau County policy, Todd concluded that Plaintiff does not meet the "good moral character" requirement of Penal Law § 400.00(1)(b) and recommended to Ryder that Doe's decision be upheld.

*Ryder's Adoption of Todd's Conclusions*

108.    Todd's recommendation was forwarded to Ryder for a final determination.

109.    Ryder reviewed Todd's conclusions and recommendation and, continuing the enforcement of PLS policies and procedures, Ryder authored a final determination letter to Plaintiff dated February 29, 2024, informing:

> Following a thorough review of the Appeals Officer's correspondence and the aforementioned record, I concur with the recommendation and hereby determine that your [ ] application was properly denied. With the enclosed documentation, you have the complete administrative record relied upon in issuing this Final Determination affirming the denial of your client's application and dismissing the appeal.

110.    Plaintiff sought review of Defendants' decision through the state courts in an Article 78 proceeding challenging Ryder's final determination as "arbitrary and capricious."

111.    Plaintiff's Article 78 proceeding was dismissed on December 31, 2024.

112.    Plaintiff now pursues his claims for Second Amendment violations under 42 U.S.C. § 1983 for damages and equitable relief.

113.    Plaintiff seeks a judicial declaration that New York State Executive Law § 296.00(16) violates the Second Amendment, facially and as applied.

114.    Plaintiff seeks an order striking as unconstitutional and permanently enjoining Defendants, their agents, employees, attorneys, those acting in concert with them and those receiving actual notice of such order from enforcing New York State Executive Law § 296.00(16), including enjoining (i) Defendant James in his official capacity from including such disclosure requirements on the statewide PPB-3 license application published by the New York State Police and (ii) the Nassau County Defendants from enforcing that portion of § 296.00(16) challenged herein.

115.    Plaintiff seeks a judicial declaration that the Nassau County policies challenged herein violate the Second Amendment, facially and as applied.

116.    Plaintiff seeks an order striking as unconstitutional and permanently enjoining the Nassau County Defendants, their agents, employees, attorneys, those acting in concert with them and those receiving actual notice of such order from enforcing the challenged Nassau County policy of interfering with the Second Amendment rights of individuals based on (i) traffic infractions and violations; (ii) non-criminal convictions; (iii) arrests for charges that were dismissed and sealed; and (iv) for "good cause."

## AS AND FOR A FIRST CAUSE OF ACTION
### U.S. Const., Amend II, XIV

117.    Repeats and realleges paragraphs "1" through and including "116."

118.    Under the theory that the challenged provisions of New York State Executive Law § 296.00(16) violate the plain text of the Second Amendment and is inconsistent with this Nation's historical traditions of firearm regulation, facially and as applied to Plaintiff.  42 U.S.C. 1983.

## AS AND FOR A SECOND CAUSE OF ACTION
### U.S. Const., Amend II, XIV

119.    Repeats and realleges paragraphs "1" through and including "118."

120.    Under the theory that the Nassau County policies and County Defendants' conduct challenged herein violate the Second Amendment and are inconsistent with this Nation's historical traditions of firearm regulation, facially and as applied to Plaintiff.  42 U.S.C. 1983.

## AS AND FOR A THIRD CAUSE OF ACTION
### *MONELL LIABILITY*

121.    Repeats and realleges paragraphs "1" through and including "120."

122.    Under the theory that, by creating, maintaining, enforcing, following, and/or applying the unconstitutional policy described herein, the County of Nassau is liable to the plaintiff

under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) for the violations of his Constitutional Rights as plead herein, 42 U.S.C. § 1983.

WHERFORE, a Judgment is respectfully requested:

- Plaintiff seeks a judicial declaration that the challenged portions of New York Executive Law § 296.00(16) violate the Second Amendment, facially and as applied to Plaintiff;

- Plaintiff seeks a judicial declaration that the Nassau County policies challenged herein violate the Second Amendment, facially and as applied to Plaintiff;

- Plaintiff seeks an order permanently enjoining the Nassau County Defendants, their agents, employees, attorneys, those acting in concert with them and those receiving actual notice of such order from enforcing the challenged portions of New York State Executive Law § 296.00(16);

- Plaintiff seeks an order permanently enjoining the Superintendent of the New York State Police, his agents, employees, attorneys, those acting in concert with them and those receiving actual notice of such order from enforcing the challenged portions of New York State Executive Law § 296.00(16), including enjoining the Superintendent in his official capacity from including such disclosure requirements on the statewide PPB-3 license application published by the New York State Police;

- Plaintiff seeks an order striking as unconstitutional and permanently enjoining Defendants, their agents, employees,  attorneys, those acting in concert with them and those receiving actual notice of such order from enforcing Nassau County's policies of interfering with the exercise of Second Amendment rights based on (i) traffic infractions and violations; (ii) non-criminal convictions; (iii) arrests for charges that were dismissed and sealed; and (iv) for "good cause."

- Awarding against each and every defendant monetary compensatory, exemplary damages as determined by a factfinder;

- Awarding against each and every defendant nominal damages;

- Awarding against the individual Nassau County defendants punitive damages as determined by a factfinder;

- Awarding against each and every defendant economic damages as determined by a factfinder;

- Awarding costs, disbursements and reasonable statutory attorney's fees;

- Granting such other, further, and different relief as to this Court seems just, equitable, and proper.

Dated: February 25, 2025
       Scarsdale, New York

                                        THE BELLANTONI LAW FIRM, PLLC
                                        *Attorneys for Plaintiff*

                            By:     _Amy Bellantoni_____
                                    Amy V. Bellantoni
                                    2 Overhill Road, Suite 400
                                    Scarsdale, New York 10583
                                    abell@bellantoni-law.com