UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER KHAYKIN,<br><br>Plaintiff,<br><br>-against-<br><br>NASSAU COUNTY, New York, PATRICK RYDER, Individually and in his Official Capacity as Police Commissioner, CHRISTOPHER TODD, Individually, JOHN DOE, Individually, and STEVEN JAMES, in his Official Capacity as NYSP Superintendent,<br><br>Defendants. | Case No. 2:25-cv-01149-GRB-LGD<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION** |

THOMAS A. ADAMS
*Attorney for the Nassau County Defendants*
By: STEVEN V. DALTON
Deputy County Attorney
1 West Street, Mineola, N.Y. 11501

Defendants Nassau County, New York and Patrick Ryder, in his Official Capacity as Police Commissioner (collectively, the "County"), respectfully submit this supplemental briefing at the direction of the Court in further support of their motion pursuant to Fed. R. Civ. P. 12(c).[1]

## PRELIMINARY STATEMENT

This case presents a straightforward municipal-liability question. Plaintiff seeks to hold Nassau County liable under 42 U.S.C. § 1983 for conduct that was neither created nor controlled by Nassau County, but instead arose from New York State's comprehensive firearms licensing regime.

At the May 19, 2026 oral argument, the Court granted leave to the parties to further brief two issues. First, whether a county can be sued for an application of a binding state law. Second, whether Plaintiff's prior Article 78 proceeding precludes him from asserting an as applied challenge to New York's licensing regime.

As to the first question—whether Nassau County may be sued under *Monell* for implementing statewide statutes, application requirements, and investigative procedures prescribed by the New York Legislature and the Superintendent of State Police—the answer is no. Nassau County cannot be sued for applying a binding state law.

The conduct challenged by Plaintiff originates from a statewide regulatory framework codified in Penal Law § 400.00 and related provisions. The Legislature established the eligibility standards for licensure, including the requirement that applicants possess the character, temperament, and judgment necessary to be entrusted with a firearm. The Legislature further required that all pistol-license applications be submitted on forms approved by the Superintendent

---

[1] Plaintiff voluntarily dismissed his claims against Patrick Ryder, Individually, Christopher Todd, Individually, and John Doe, Individually. *See* ECF 44. *See also* May 19, 2026 Tr. at 4:25-5:1 ("The claims against the individual defendants are dismissed with prejudice").

of State Police and directed licensing authorities to investigate the information supplied by applicants.

Pursuant to that statutory delegation, the Superintendent approved Form PPB-3, a uniform statewide application used throughout New York. The form expressly requires applicants to disclose all prior arrests and specifically states that "Sealed arrests must be included" pursuant to Executive Law § 296(16). Nassau County neither drafted that form nor possessed authority to alter its contents.

Plaintiff nevertheless seeks to transform a challenge to a statewide licensing framework into a municipal liability claim. But § 1983 does not permit a municipality to be held liable merely because local officials administer state law. Under *Monell* and *Vives v. City of New York*, municipal liability exists only where the challenged conduct stems from a municipal policy or custom. Here, the very policies Plaintiff attacks—the disclosure requirements, background-investigation procedures, and consideration of arrest history—were created by state law and implemented through directives issued by state officials.

Indeed, Plaintiff's own pleadings confirm that the alleged constitutional injury flows from Executive Law § 296(16) and the State's firearms licensing regime. Nassau County did not enact those provisions, could not amend them, and lacked authority to disregard them. It merely performed the administrative functions assigned to it by state law.

Because the challenged conduct derives from a statewide legal framework rather than any Nassau County policy, Plaintiff cannot establish the municipal-policy requirement necessary to impose liability under *Monell*.

As to the second question—whether Plaintiff's prior Article 78 proceeding precludes him from asserting an as-applied challenge to New York's licensing regime—the answer is yes.

Plaintiff's claims are barred by collateral estoppel and the *Rooker-Feldman* doctrine because the question of the constitutionality of the statutes as applied to Plaintiff's application were necessarily decided when the State Court judge found the determination denying Plaintiff a permit had a rational basis, was not arbitrary and capricious, and that the "record created a reasonable nexus to conclude that he would pose a danger to himself or others if permitted to carry a weapon."

The remaining claims against the County should therefore be dismissed.

## STATEMENT OF FACTS

### A. New York Has Established a Comprehensive Statewide Firearms Licensing System

Firearm licensing in New York is governed by Penal Law § 400.00, which establishes the eligibility criteria, application procedures, investigative requirements, and licensing standards applicable throughout the State. Among other things, the statute requires that a licensing officer determine whether an applicant possesses the requisite "good moral character," defined as the "essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others." Penal Law § 400.00(1)(b).

The statute further requires licensing officials to investigate firearm license applications before a license may issue. Penal Law § 400.00(4). The investigation includes review of criminal-history information and other records relevant to determining eligibility under state law.

### B. The Legislature Required Use of State Police–Approved Application Forms

The Legislature directed that applications for licenses to carry or possess pistols and revolvers be submitted on forms approved by the Superintendent of State Police. *See* Penal Law § 400.00(3)(a). Specifically, Section 400.00(3)(a) provides that, outside New York City, firearm-license applications "shall" be approved as to form by the Superintendent of State Police. *Id.* Consistent with that directive, the Superintendent approved Form PPB-3, a uniform statewide

firearm-license application. The form expressly states that it is approved by the Superintendent pursuant to Penal Law § 400.00(3). *Id.*

Form PPB-3 asks each applicant whether he or she has:

> "ever been arrested, summoned, charged or indicted anywhere for any offense, including DWI (except traffic infractions)."

*Id.* The form further instructs applicants that:

> "Sealed arrests must be included. *Refer to Executive Law §296(16)."

*Id.*

Accordingly, the disclosure of sealed arrests challenged in this action was mandated by a form prescribed pursuant to statewide authority delegated to the Superintendent of State Police. Nassau County neither authored nor amended the form and was required to process applications submitted on the State-approved application.

**C. Plaintiff Submitted a Firearm License Application Pursuant to New York's Licensing Regime**

Plaintiff applied for a license pursuant to New York's statewide licensing framework. In accordance with Penal Law § 400.00 and the requirements of Form PPB-3, information concerning Plaintiff's criminal history and prior encounters with law enforcement was disclosed and investigated during the application process. *See* ECF 1, Complaint ¶¶ 83-91.

Following the investigation required by state law, Plaintiff's application was denied. *Id.* ¶ 91. Plaintiff thereafter pursued an Article 78 proceeding challenging the denial. *Id.* ¶ 110. The state court upheld the licensing determination and rejected Plaintiff's challenge to the denial of his application. *Id.* ¶ 111. As alleged in the Complaint, Plaintiff subsequently commenced this federal action challenging, among other things, the consideration of criminal-history information

authorized by Executive Law § 296(16) and utilized during New York's firearm-licensing process.[2] *Id.* ¶ 112.

### D. Plaintiff Seeks to Impose Municipal Liability for Conduct Prescribed by State Law

The Complaint alleges that the consideration of sealed arrests and related information during the licensing process violated Plaintiff's constitutional rights and seeks relief against Nassau County on that basis. *Id.* ¶ 120. As relevant here, Plaintiff challenges conduct arising from State-created application requirements, State-created disclosure requirements, and State-created investigative procedures established by Penal Law § 400.00, Executive Law § 296(16), and Form PPB-3. *Id.* ¶ 118.

Nassau County's role was limited to administering the licensing framework established by New York State. *Id.* ¶ 91. It did not enact the challenged statutes, draft the challenged application form, or determine whether statewide disclosure requirements would apply. Those decisions were made by the Legislature and the Superintendent of State Police.

## ARGUMENT

### I. NASSAU COUNTY CANNOT BE HELD LIABLE UNDER § 1983 BECAUSE THE CHALLENGED CONDUCT DERIVES FROM STATEWIDE LAW AND STATE-CREATED LICENSING REQUIREMENTS RATHER THAN ANY MUNICIPAL POLICY OR CUSTOM

Plaintiff seeks to impose municipal liability upon Nassau County for actions taken pursuant to New York's statewide firearms licensing scheme. The claim fails because the challenged conduct does not arise from any Nassau County policy, custom, or practice. Rather, it arises from statutes enacted by the New York Legislature, forms prescribed by the Superintendent of State

[2] Notably, Plaintiff is not challenging Penal Law § 400.00 as facially unconstitutional. In any event, the Second Circuit recently held that Penal Law § 400 is not facially unconstitutional. *See, e.g.*, *Antonyuk v. James*, 120 F.4th 941, 981 (2d Cir. 2024) (holding that the "good moral character" requirement of Pen. L. § 400 "is not facially invalid because it is not unconstitutional in all its applications.").

Police, and mandatory application and investigation procedures imposed uniformly throughout the State. Under *Monell* and *Vives*, Nassau County may not be held liable under § 1983 for implementing and administering state law.

**A. Municipal Liability Cannot Be Predicated Upon Mere Implementation of State Law**

A municipality may be liable under § 1983 only when the alleged constitutional violation was caused by an official municipal policy, custom, or practice. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). The constitutional injury must be attributable to the municipality itself rather than to the State. Accordingly, courts have distinguished between: (1) municipal policies adopted by local decisionmakers; and (2) conduct undertaken to implement statewide mandates. When local officials merely execute state policy, the municipality is not the relevant policymaker for purposes of Monell liability.

The Second Circuit's decision in *Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008), confirms that a municipality is not liable merely because local officials apply state law. Rather, liability can exist only where the municipality enforced a statute that it was authorized, but not required, to enforce. *Id.* at 353. Where the policy originates with the State and local officials have no discretion in its implementation, the policy remains state policy, not municipal policy. That principle controls here.

**B. The Challenged Requirements Originate from State Statutes and State Police Directives, Not Nassau County**

The conduct challenged by Plaintiff arises directly from New York's statewide firearms licensing regime. New York Penal Law § 400.00 establishes the eligibility requirements, application procedures, investigative requirements, and licensing standards applicable throughout New York State. The New York Legislature—not Nassau County—determined that applicants

must demonstrate "good moral character," submit extensive background information, and undergo investigation before a license may issue. Penal Law § 400.00(1), (3), and (4).

Most importantly, Penal Law § 400.00(3)(a) provides that pistol-license applications "shall" be made on forms approved by the Superintendent of State Police. The statute does not permit counties to create their own forms or alter the contents of forms approved by the Superintendent.

Pursuant to that authority, the Superintendent approved Form PPB-3, a statewide handgun licensing application used throughout New York. ECF 1, Complaint ¶ 43. Form PPB-3 specifically requires applicants to disclose whether they have: "ever been arrested, summoned, charged or indicted anywhere for any offense." ECF 1, Complaint ¶ 29 n.3 (incorporating by reference the November 2024 PPB-3). It further directs that "[s]ealed arrests must be included. *Refer to Executive Law § 296(16)." *Id.* The PPB-3 expressly states that it "is approved by the Superintendent of the State Police as required by Penal Law section 400.00, SUBD. 3." *Id.*

Accordingly, the disclosure requirement challenged by Plaintiff did not originate with Nassau County. It originated with a form created pursuant to authority delegated by the Legislature to the Superintendent of State Police. Nassau County neither drafted the form nor possessed authority to alter its contents.

**C. Nassau County Had No Authority to Eliminate or Ignore the State-Mandated Disclosure Requirements**

Plaintiff's theory assumes that Nassau County independently decided to require disclosure of sealed arrests. The statutory scheme demonstrates otherwise. First, the New York Legislature required the use of State Police-approved forms. Penal Law § 400.00(3)(a). Second, the Superintendent approved a form requiring disclosure of all arrests, including sealed arrests. ECF 1, Complaint ¶ 29 n.3. Third, the New York Legislature further required that licensing authorities

investigate all statements contained in the application. Penal Law § 400.00(4). The statute directs investigating authorities to examine criminal history records, process fingerprints, and report the results to the licensing officer. *Id.*

Thus, Nassau County was obligated to: (a) accept a State-approved application; (b) receive the disclosures required by that application; (c) investigate the disclosures as directed by state law; and (d) evaluate eligibility under standards enacted by the New York Legislature.

Nassau County had no authority to remove the arrest-history questions from the application, instruct applicants not to answer them, prohibit disclosure of sealed arrests, or refuse to investigate information that state law required applicants to provide. The challenged conduct therefore derives from state law rather than county policy.

### D. The Existence of Discretion In Individual Licensing Decisions Does Not Transform State Law into Municipal Policy

Plaintiff will likely argue that Nassau County exercised judgment when assessing the significance of his criminal history and therefore acted pursuant to municipal policy. That argument misunderstands the nature of *Monell* liability.

Virtually every state regulatory scheme confers some measure of discretion upon local administrators. Judges exercise discretion when applying sentencing statutes. Administrative agencies exercise discretion when applying statewide regulations. Licensing officials exercise discretion when applying legislatively prescribed eligibility standards. The exercise of judgment does not alter the source of the governing rule.

Here, the specific conduct challenged by Plaintiff is the collection and consideration of information that the Legislature required applicants to disclose on a State Police-approved form. *See* ECF 1, Complaint ¶¶ 43-51. Nassau County did not create that requirement, did not adopt it as a county ordinance, and did not possess authority to repeal or alter it. Even if County officials

exercised judgment when evaluating the disclosed information, the challenged policy remained a policy of the State. *Id.*

As *Vives* teaches, municipal liability cannot be premised upon implementation of a statewide legal requirement that the municipality did not create. *Id.* Because the County lacked final policymaking authority over the challenged disclosure and investigative requirements, Plaintiff cannot establish the municipal-policy element required by *Monell*.

### E. Plaintiff's Own Pleadings Confirm That the Alleged Constitutional Injury Flows from State Law

The Complaint repeatedly identifies Executive Law § 296(16) as the source of the constitutional injury and seeks to enjoin Nassau County from enforcing that statute. See ECF 1, Complaint ¶¶ 43-71 (Complaint section titled "New York Exec. Law § 296(16) Violates the Second Amendment, Facially and As-Applied"). Plaintiff alleges, among other things, that § 296(16) authorizes consideration of sealed arrests and that the statute itself violates the Second Amendment. *Id.* ¶ 9 ("by requiring applicants who complete the statewide pistol license application to disclose sealed arrests and non-criminal violations, the New York State Police Superintendent's enforcement of New York State Executive Law § 296.00(16) violates the Second Amendment"). Those allegations underscore the absence of a municipal policy. The challenged authority derives from a statute enacted by the New York Legislature and implemented through a State Police-approved application form. Nassau County did not create either source of law.

Where the alleged constitutional defect resides in a statewide enactment and statewide licensing requirements, the proper target of the challenge is the State's policy choice, not the local governmental entity required to administer it.

## II. THE *ROOKER-FELDMAN* DOCTRINE AND COLLATERAL ESTOPPEL BAR PLAINTIFF FROM BRINGING AN AS-APPLIED CHALLENGE TO EXECUTIVE LAW 296(16) THAT COULD HAVE BEEN RESOLVED IN THE UNDERLYING ARTICLE 78 PROCEEDING.

When a plaintiff could have brought his constitutional and statutory claims in an Article 78 proceeding, he will be barred by collateral estoppel and the *Rooker-Feldman* doctrine, from raising those issues in a subsequent federal action. *See, e.g.*, *Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 779 (S.D.N.Y. 2003) ("Although Article 78 courts are courts of limited jurisdiction and may not hear a general constitutional challenge to a law or regulation, they may entertain claims that the application of a rule is unconstitutional.") (citations omitted).

In *McAdams v. Suffolk County Police Department*, No. 16-cv-6283 (ADS)(AKT), 2017 WL 3206322, *9 (E.D.N.Y. July 26, 2017), the Court dismissed the plaintiff's claims under the doctrine of collateral estoppel because in the underlying Article 78 proceeding, "by finding that the Plaintiff's dismissal was not arbitrary and capricious, Justice Pitts had to consider whether it was constitutionally impermissible," and therefore the plaintiff's constitutional claims were resolved by necessary implication. The Court further explained:

> In that case, the parties litigated whether the State Defendants' actions were arbitrary and capricious. The decision that the actions were not arbitrary and capricious was essential to Justice Pitts' decision and the resolution of the merits; and as stated above, there is no dispute that the Plaintiff had a full and fair opportunity to litigate the issues in New York State Supreme Court. Accordingly, the Plaintiff's procedural due process claims are barred by collateral estoppel and the *Rooker-Feldman* doctrine.

*Id.* at *10.

Likewise, the court that heard Plaintiff's Article 78 petition determined that Plaintiff's prior criminal record, including 6 arrests, 10 driver license suspensions, and 27 violations of the Vehicle and Traffic Law, was properly included in the evaluation of his permit under Penal Law § 400. Moreover, the court found that "the final determination had a rational basis and was not arbitrary

and capricious." Decision and Judgment at 3. Finally, the court explained that "the final determination expressly found that Khaykin's record created a reasonable nexus to conclude that he would pose a danger to himself or others if permitted to carry a weapon." *Id.* The New York court could not have reached these conclusions without necessarily determining that the inclusion of Plaintiff's prior criminal history—disclosed pursuant to Executive Law § 296(16)—was constitutional as applied to Plaintiff.

## CONCLUSION

For the foregoing reasons, the County cannot be sued for an application of binding state law, and Plaintiff's as-applied constitutional challenge is barred by collateral estoppel and the *Rooker-Feldman* doctrine. Accordingly, Plaintiff's Complaint should be denied in its entirety as to the County.

Dated: July 9, 2026
Mineola, New York